O’Neill, J.,
dissenting.
{¶ 77} I respectfully dissent from the decision to affirm the BTA’s determination of real-property value in this case. The BTA and, now, the majority have essentially decided that the value of an assisted-living facility is better determined by comparison to apartment buildings than by comparison to other assisted-living facilities. I cannot stand behind that logic, even under a posture of deference to the BTA.
{¶ 78} The subject property is located in an area zoned “Senior Residence/Life Care District,” which is intended to meet the housing and assistance needs of persons 60 years or older. An assisted-living facility, Brookside Estates, was constructed on the parcel in 1998. The facility includes fewer than 100 units, the vast majority of which are 254-square-foot studios. The building includes four lounges, a commercial kitchen, a dining room, a craft room, a television room, and a small beauty shop. Bathrooms are handicapped accessible, hallways are wide enough to allow for the passage of wheelchairs and medical carts, and the front driveway is curved to allow easy access for emergency vehicles.
*46 {¶ 79} In short, this is an assisted-living facility; it is not an apartment building. Indeed, as the school board’s appraiser testified before the BTA, “[i]t would take a massive amount of reconfiguration” to operate this property as an apartment building.
{¶ 80} This basic distinction between an assisted-living facility and an apartment building compels me to conclude that the BTA acted unreasonably when it determined this property’s value by reference to data about apartment buildings. As the majority explains, two appraisals were presented to the BTA. The property owner’s appraiser relied exclusively on data about apartment buildings and opined a value of $3,100,000. By contrast, the school board’s appraiser considered only data about assisted-living facilities and arrived at a value of $5,400,000. Both appraisals assigned a value significantly lower than the property’s most recent sale price, $8,740,000. It was an assisted-living facility then, and it is an assisted-living facility now. To value it based upon a deteriorating apartment market is disingenuous. To follow the logic of the majority and the BTA, why not bring in comparables from abandoned car dealerships and factories of similar square footage? Surely that would bring the tax value even lower.
{¶ 81} For reasons I find unpersuasive, the BTA decided to credit the owner’s appraisal. The BTA essentially found that data about apartment buildings was better evidence of an assisted-living facility’s value than data about other assisted-living facilities. In doing so, the BTA concluded that the property had lost $5,640,000 in value since its 2004 sale, just 27 months earlier. There is simply no evidence in this record to support such a conclusion. Has the population of senior citizens dropped so precipitously that the owner would sell this asset for a $5.6 million loss a little over two years after purchasing it? This result is clearly unreasonable, and thus I cannot defer.
{¶ 82} I recognize that in the past, the BTA and this court have permitted comparisons to apartment buildings as a starting point for determining the value of an assisted-living facility. See, e.g., LTC Properties, Inc. v. Licking Cty. Bd. of Revision, 133 Ohio St.3d 111, 2012-Ohio-3930, 976 N.E.2d 852, ¶ 21; Dublin Senior Community Ltd. Partnership v. Franklin Cty. Bd. of Revision, 80 Ohio St.3d 455, 460, 687 N.E.2d 426 (1997). Admittedly, relying on apartment comparables can facilitate the distinction between the real-property value of an assisted-living facility and its business value. See Harbor Court Ltd. Partnership v. Cuyahoga Cty. Bd. of Revision, BTA No. 92-T-1054, 1994 WL 269639, *7-8 (June 10, 1994). But that does not mean that conventional apartment complexes make the best comparable properties in all cases. Id. at *11.
{¶ 83} Moreover, we have not previously been squarely presented with the question whether the BTA can reasonably conclude that an appraisal based on apartment comparables is the best evidence of an assisted-living facility’s value *47 even when it is simultaneously presented with a credible appraisal based on assisted-living-facility comparables. For the reasons explained above, I would now hold that it cannot.
Sleggs, Danzinger & Gill Co., L.P.A., and Todd W. Sleggs, for appellee Health Care REIT, Inc.
Kadish, Hinkel & Weibel, Kevin M. Hinkel, and Rita M. Jarrett, for appellant.
{¶ 84} Accordingly, I would reverse the BTA’s decision and would find the property’s value to be $5,400,000, which is the value reached by the appraisal that relied on data about other assisted-living facilities to determine the value of this assisted-living facility.
O’Connor, C.J., and Lanzinger, J., concur in the foregoing opinion.